U. S. ex rel. Jessie S. **LOMBARDINO,**
Petitioner,

v.

Louis A. **HEYD,** Jr., **Criminal Sheriff,**
**Respondent.**

**Misc. No. 1750.**

United States District Court,
E. D. Louisiana,
New Orleans Division.

Sept. 24, 1970.

Kendall L. Vick, O'Keefe & O'Keefe, New Orleans, La., for petitioner.

Numa Bertel, Asst. Dist. Atty., Parish of Orleans, for respondent.

CASSIBRY, District Judge:

Petitioner, Jessie S. Lombardino, asks this court to release him from state custody by writ of habeas corpus on the ground that he is being held in violation of the Constitution. The contentions made here have been previously presented to and rejected by the Criminal District Court for the Parish of Orleans and the Louisiana Supreme Court. The petition is therefore properly before this court. 28 U.S.C. §§ 2241(c) (3), 2254.

On February 16, 1970, Lombardino was convicted in state court of two counts of attempted simple burglary following the entry of pleas of guilty. He was sentenced to serve eighteen months on each count, the sentences to run concurrently. Execution of the sentences was suspended and petitioner was placed on active probation for a period of three years. As one of the conditions of his probation, petitioner agreed to

"Refrain from the violation of any law of Louisiana, or of any other State, or of the District of Columbia, or of the United States; and to refrain from the violation of any Ordinance of any political subdivision of the State of Louisiana; * * * "

On March 8, 1970, Lombardino was stopped and frisked without a warrant by a policeman who had been an arresting officer on petitioner's burglary charge. The officer had neither reasonable grounds for suspicion that Lombardino was armed nor probable cause for arrest. In the search of petitioner's person, the officer found a tin of marijuana. A hearing on a motion to suppress was held on April 20, 1970, and the marijuana was ordered suppressed when the judge determined that the search had been made in violation of petitioner's constitutional rights. The charge of possession of marijuana was subsequently dropped by the state.

While the possession charge was still pending, however, the Probation and Parole Division of the Louisiana Department of Corrections placed a detainer against Lombardino for violation of his probation. Petitioner has since been held in Orleans Parish Prison.

Pursuant to Article 900, Louisiana Code of Criminal Procedure, a hearing was conducted on June 2, 1970, to determine whether Lombardino had violated the conditions of his probation. The state judge presiding at the revocation hearing was the same one who had placed petitioner on probation and who had suppressed the marijuana in connection with the possession charge. After hearing the probation officer's testimony that Lombardino had been found in possession of marijuana, the judge concluded that petitioner had violated a condition of his probation and ordered the probation revoked.

## I.

Lombardino's principal contention is that revocation of his probation upon the basis of illegally seized evidence violated his right to be free from unreasonable searches and seizures as guaranteed by the Fourth and Fourteenth Amendments. Petitioner thus invites this court to extend the Fourth Amendment exclusionary rule [1] to probation revocation hearings. I decline the invitation at this time.

■ I have no hesitation in stating that probationers are entitled to basic constitutional rights, including protection from illegal searches and seizures. Brown v. Kearney, 355 F.2d 199, 200 (5th Cir. 1966); United States v. Hallman, 365 F.2d 289, 291 (3d Cir. 1966); cf. Martin v. United States, 183 F.2d 436, 439 (4th Cir. 1950). The crux of the question posed here, however, is the *extent* of such rights. "[T]he federal constitutional rights of an accused in a criminal prosecution and the rights of an offender in proceedings on revocation of conditional liberty under parole or probation are not coextensive." Brown v. Warden, 351 F.2d 564, 567 (7th Cir. 1965).

■ In this case, Lombardino *was* afforded protection from the unlawful search and seizure when the marijuana was suppressed and the possession charge dropped. Lombardino's right to be free from "unreasonable searches and seizures" [2] was recognized to this extent.

Petitioner has been unable to cite any reported cases in which evidence was held inadmissable in probation or parole revocation proceedings on the ground that it was illegally obtained. This court has likewise been unsuccessful in searching for such authority. On the other hand, there are at least two reported decisions which have held illegally seized evidence admissible in parole

---

1. The exclusionary concept as applied in criminal proceedings is set forth in Weeks v. United States, 232 U.S. 383, 392, 393, 34 S.Ct. 341, 58 L.Ed. 652 (1914); Elkins v. United States, 364 U.S. 206, 217, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960);

Mapp v. Ohio, 367 U.S. 643, 656, 81 S. Ct. 1684, 6 L.Ed.2d 1081 (1961).

2. Fourth Amendment, United States Constitution.

revocation hearings. United States ex rel. Sperling v. Fitzpatrick, 426 F.2d 1161 (2d Cir. 1970); In re Martinez, 1 Cal.3d 641, 83 Cal.Rptr. 382, 463 P.2d 734 (1970).[3]

Chief Judge Lumbard, concurring in *Sperling,* explained why the exclusionary rule should not be extended to parole revocation hearings at this time:

"To apply the exclusionary rule in the context of parole revocation hearings at the present time would merely exacerbate the problems [inherent in the rehabilitative function of the parole system]; to import fourth amendment suppression law into this process would in fact be counterproductive. Parole officers would be forced to spend more of their time personally gathering admissable proof concerning these parolees who cannot or will not accept rehabilitation. Time devoted to such field work necessarily detracts from time available to encourage those parolees with a sincere desire to avoid the all-too-familiar cycle of recidivism. An even greater potential loss would be in the time available to counsel and supervise —particularly in the early months— those who leave confinement with the question of rehabilitation in real doubt.

"Although I am somewhat skeptical about the effectiveness of 'other remedies' to deter police misconduct, I must agree * * * that a double application of the exclusionary rule is not warranted at the present time. I draw this conclusion by balancing the interests of all parolees in securing administration of the parole system which is as nearly consonant with its dual goals as is possible at present levels of staffing and funding against the interest of individual parolees like Sperling in not being subjected to a search by local police officers which the government seems to concede was unconstitutional under traditional standards. *The time may come when the balance will shift. Proof of widespread police harassment of parolees would cause such a shift since the exclusionary rule is a deterrent which should be used when the need for deterrence is clearly shown.* But on the facts of the present situation, I am unwilling to strike a balance which could achieve little, other than a distortion of the priorities of the parole system." 426 F.2d at 1165, 1166. (Emphasis added.)

While Judge Lumbard was speaking "in the context of parole revocation hearings," what he said also holds true for probation revocation hearings.

Expansion of the exclusionary rule to probation revocation hearings would in all likelihood further its laudable purpose of deterring unconstitutional methods of law enforcement.[4] But the good to be obtained from such expansion must be balanced against the harm which will result due to the unique nature and purpose of the probation revocation hearing.[4A] If the rehabilitative function of the probation system is to be fostered, it seems imperative that the judge charged with the responsibility and discretion to grant, deny or revoke probation be fully aware of all the facts and circumstances in a particular case. This is especially so where, as here, there has been no evidence of police harassment of probationers. As Judge Lumbard has said "[t]he time may come when the

---

3. Also see Grogan v. United States, 262 F.2d 78 (5th Cir. 1959). In *Grogan* the District Court revoked probation based upon evidence obtained by federal officers in a search of defendant's truck. The Court considered the evidence on the ground that the search was legal and on the alternative ground that the evidence could be considered even though the search was illegal. The Fifth Circuit upheld the legality of the search in another action and found it unnecessary to answer defendant's contention that the District Court had considered illegally seized evidence in the revocation hearing.

4. See cases cited in footnote 1, *supra.*

4A. See In re Martinez, 1 Cal.3d 641, 83 Cal.Rptr. 382, 463 P.2d 734, 740 (1970).

balance will shift", but this is not that time.

## II.

■ Lombardino also urges that revocation of probation because of mere arrest, without more, is a denial of due process. The point may be well taken, but it is not germane to this case. Perusal of Lombardino's "Conditions of Probation" [5] lays bare the flaw in this contention. Petitioner agreed to "refrain from the *violation* of any law * * *" (Emphasis added.) Merely being arrested would not be a breach of this condition; there must be an actual violation of law or commission of an offense. I find no denial of due process in such a condition of probation. Lombardino's probation was revoked not because he was arrested, but because he breached a condition of his probation, i. e., he violated a law.

## III.

■ Finally, Lombardino argues that Article 901, Louisiana Code of Criminal Procedure, requires a conviction before probation can be revoked. Since the state court was without authority to revoke his probation in the absence of a conviction, Lombardino contends its action constituted arbitrary state action in violation of the due process clause of the Fourteenth Amendment. This proposition is clearly without merit. Article 901 provides that "[w]hen a defendant who is on probation for a felony commits and is convicted of a felony * * * his probation may be revoked as of the date of the final conviction of the felony." This provision is obviously not intended to restrict or limit the authority of the trial court to "impose any specific conditions reasonably related to [the defendant's] rehabilitation * * *" Article 895, La.Code of Cr.Proc. It seems patent that Article 901 is meant to give the court power to revoke a probation upon conviction of a felony even in the absence of a specific condition of probation to that effect.[6]

## IV.

■ A probation revocation hearing is not an adversarial proceeding; it is neither a civil action nor a criminal prosecution. Hyser v. Reed, 115 U.S. App.D.C. 254, 318 F.2d 225 (1963). Rather, it is administrative in nature and "is concerned not only with protecting society, but also, and most importantly, with rehabilitating and restoring to useful lives those placed [on probation]." United States ex rel. Sperling v. Fitzpatrick, *supra*, 426 F.2d at 1163. Revocation of probation is within the discretion of the trial judge; he need only be "reasonably satisfied" that the probationer has violated a condition of

5. The conditions of probation to which Lombardino agreed were:
"(1) Meet all your family responsibilities under the laws of Louisiana;
(2) Report to the probation officer as directed by said officer;
(3) Permit the probation officer to visit you at your home or elsewhere;
(4) Devote yourself to an employment or occupation approved by the probation officer;
(5) Refrain from owning or possessing any firearm or dangerous weapon unless granted written permission by your probation officer;
(6) Refrain from frequenting unlawful or disreputable places or consorting with disreputable persons;
(7) Remain within the jurisdiction of this Court unless written permission to do otherwise is given by this Court or the probation officer;
(8) Notify the probation officer or this Court of any change in your address or employment;
(9) Refrain from the violation of any law of Louisiana, or of any other State, or of the District of Columbia, or of the United States; and to refrain from the violation of any Ordinance of any political subdivision of the State of Louisiana; * * *"

6. Also see Shaw v. Henderson, 430 F.2d 1116 (5th Cir. 1970), footnote 3: "A conviction is not a Louisiana or a constitutional prerequisite to revocation [of probation]."

his release. United States v. Cates, 402 F.2d 473, 474 (4th Cir. 1968); Seymore v. Beto, 383 F.2d 384 (5th Cir. 1967); Yates v. United States, 308 F.2d 737, 739 (10th Cir. 1962); Manning v. United States, 161 F.2d 827, 829 (5th Cir. 1947). Lombardino was given a full hearing before his probation was revoked. He was represented by able counsel of his own choosing and was given the opportunity to cross-examine and present evidence in his behalf. He did not deny that he had violated a condition of his probation. I find no abuse of the state trial judge's discretion in this case.

The petition for a writ of habeas corpus is therefore dismissed.