THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* FREDDIE DOWERY, Defendant-Appellant.

(No. 58392;

First District (5th Division)—May 3, 1974.

*Modified on denial of rehearing June 11, 1974.*

James J. Doherty, Public Defender, of Chicago (Saul H. Braunde, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Kenneth L. Gillis and Mary Ellen Dienes, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

Defendant appeals from the revocation of his probation, alleging that the trial court erroneously admitted certain evidence at the probation revocation proceeding.

While on probation following a conviction for armed robbery, defendant was arrested and charged with burglary. At the preliminary hearing on the burglary charge, Police Officer James Polk was the only witness. Prior to the officer's testimony, defendant made a "preliminary motion to quash and suppress." The record does not contain a written motion, and it is not clear from the report of proceedings exactly what defendant sought to quash and suppress. On appeal, however, both parties have treated it as a motion to quash the arrest and to suppress the items allegedly stolen in the burglary. Thus, it appears that the motion to suppress was made under section 114—12(b) of the Code of Criminal Procedure. Ill. Rev. Stat. 1973, ch. 38, par. 114—12(b).

Officer Polk then testified at the hearing on the motion that he and another officer made a daylight afternoon arrest of defendant, after observing defendant walking down the street carrying a bulky object wrapped in a red blanket and a lavender sheet. He was with another man carrying a plastic tote bag. The men ran into an alley and dropped the articles they were carrying. Only defendant was apprehended, and the police recovered the dropped items, including the tote bag and a component set. At the police station, defendant said that a friend of his had committed the burglary. Following the officer's testimony, the court granted defendant's motion to suppress, apparently on the ground that the search and seizure were pursuant to an illegal arrest. In their briefs, the parties assume that the motion to quash was also granted, although this too is not clear from the record. The matter was stricken from the call with leave to reinstate, and the State did not appeal from the suppression order.

A few days later a rule was filed to show cause why defendant's probation should not be revoked. At the initial hearing on the rule, defense counsel objected to the testimony of Officer Polk on the ground that the order of suppression issued at the preliminary hearing was binding on the court at the revocation proceeding. After argument of counsel, the court ruled the evidence admissible, relying on Federal court decisions

holding that the exclusionary rule prohibiting the use of evidence illegally seized does not apply to probation revocation hearings.

Officer Polk then testified substantially as he did at the preliminary hearing. In addition, Sandrea Scott testified that the recovered articles had been stolen from her home after she left for work that day. Defendant, in his testimony, denied participating in the burglary and stated he met Junkie Slim shortly before the arrest and bought the component set (record player and records) from him for $25. As they were walking down the street, Junkie spotted the police and told defendant for the first time that the items were "hot." Defendant admitted he told Officer Polk that others committed the burglary, and he was helping to carry items away.

After the hearing, defendant's probation was revoked, and he was sentenced to a term of 2 to 4 years.

OPINION

## I.

Defendant's first contention is that the officer's testimony was erroneously admitted at the probation revocation proceeding. He argues that because the State failed to appeal from the suppression order issued at the preliminary hearing, it may not proceed on the same evidence before another judge and re-try an issue already determined.

In support of this contention, defendant cites *People v. Taylor*, 50 Ill.2d 136, 277 N.E.2d 878, which held that where the State fails to appeal from the granting of a motion at a preliminary hearing to suppress evidence illegally seized, the State is barred from using that evidence at a subsequent trial. The State had the right to appeal the suppression order under Supreme Court Rule 604. (Ill. Rev. Stat. 1973, ch. 110A, par. 604.) However, it argues that its failure to appeal does not bar the testimony of the police officer involved in the arrest and seizure at a probation revocation proceeding.

■■ *Taylor* is based in part upon section 114—12(b) of the Code of Criminal Procedure (motion to suppress evidence illegally seized), which states that the evidence suppressed "shall not be admissible in evidence against the movant *at any trial.*" (Ill. Rev. Stat. 1973, ch. 38, par. 114—12(b).) (Emphasis added.) The State suggests that a probation revocation hearing is not a "trial", as contemplated in *Taylor* and in section 114—12(b). Initially, we note that the legislature refers to such proceeding as a "hearing" (Ill. Rev. Stat. 1971, ch. 38, par. 117—3; Ill. Rev. Stat. 1973, ch. 38, par. 1005—6—4), and that the statutes relating to probation are now included under sentencing in the Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, par. 1005—6—1 *et*

*seq.*), and formerly were included under "Proceedings after Trial" in the Code of Criminal Procedure (Ill. Rev. Stat. 1971, ch. 38, par. 117—1 *et seq.*). At oral argument, defense counsel conceded that a probation revocation hearing is not a "trial." We are of the opinion that such a hearing is not a trial within the meaning of section 114-12(b), and we find that the testimony of the officer concerning the illegally seized items is not prohibited by the law of this state.

## II.

Defendant's second argument is that the fourth amendment's exclusionary rule prohibits the use of evidence at a probation revocation hearing after that evidence has been found to have been illegally seized. As we noted above, the record is not clear that the evidence was suppressed for this reason. However, since the briefs of both parties indicate this as being the ground for suppression, we shall decide the issue accordingly.

■■ Under the exclusionary rule, relevant evidence illegally obtained by police is not admissible to prove the guilt of the victim. The accepted purpose of its application is to deter the police from illegal searches and seizures. (*Mapp v. Ohio*, 367 U.S. 643, 6 L.Ed.2d 1081, 81 S.Ct. 1684.) In this regard, it is possible that the extension of the exclusionary rule to probation revocation proceedings might further deter illegal police conduct. However, the supplemental deterrence that such an extension of the rule would afford is uncertain. An officer undeterred by the exclusion of evidence from a trial that might lead to a conviction is not likely to be deterred by the fact that unlawfully obtained evidence may not be used to revoke probation. Moreover, as in the case at bar, where an officer is unaware that the subject of a search is a probationer, the supplemental deterrence is virtually non-existent.

Against this uncertain deterrent effect, we must weigh the effect that exclusion of relevant, reliable, but illegally obtained evidence might have on the probation system. Probation is an integral part of this State's statutory sentencing policy. Its purpose is to grant a defendant an opportunity for rehabilitation without incarceration. (*People v. Henderson*, 2 Ill.App.3d 401, 276 N.E.2d 372.) The rehabilitative goal, however, must be considered in light of the objective of protecting society by preventing the commission of offenses. A court sentencing an offender to probation takes a calculated risk that the offender's rehabilitation will progress better and that society will be adequately protected by the offender's return to the community under supervision. When it appears that the court's confidence has been misplaced, prompt steps should be taken to consider the advisability of revoking probation. To prevent

it from considering relevant and significant evidence concerning an alleged violation would impede the exercise of its discretion and perhaps undermine the attempt the legislature has made in the Unified Code of Corrections to assure the maximum input of information into the sentencing process. (*See* Ill. Rev. Stat. 1973, ch. 38, par. 1005—4—1.) The possible unavailability of relevant evidence at the probation revocation proceeding might also result in a hesitancy to initially sentence to probation, which would be manifestly unfair to offenders and to society and might seriously interfere with the rehabilitative purposes of the criminal justice system.

In summary, we believe that under present circumstances the supplemental deterrence resulting from the expansion of the exclusionary rule to probation revocation proceedings would be minimal. The potential disruption of the probation system by an application of the rule could be substantial.

■ ■ We note also that other courts have ruled on this question in both probation revocation cases and the analogous parole revocation cases, and they have all concluded that the exclusionary rule need not be applied to such hearings. *See, e.g., United States v. Hill* (7th Cir. 1971), 447 F.2d 817; *United States v. Allen* (N.D. Cal. 1972), 349 F.Supp. 749; *United States ex rel. Sperling v. Fitzpatrick* (2d Cir. 1970), 426 F.2d 1161; *In re Martinez,* 1 Cal.3d 641, 463 P.2d 734, 83 Cal. Rptr. 382, *cert. denied,* 400 U.S. 851, 27 L.Ed.2d 88, 91 S.Ct. 71.

In *U.S. ex rel. Lombardino v. Heyd* (E.D. La. 1970), 318 F.Supp. 648, *aff'd* (5th Cir. 1971), 438 F.2d 1027, after a Louisiana state court suppressed the use of evidence produced from a warrantless search, the same evidence was allowed in a probation revocation hearing. The Louisiana Supreme Court rejected the contention that the fourth and fourteenth amendments barred the use of illegally seized evidence to revoke his probation. On petition for writ of habeas corpus, the Federal District Court, E. D. Louisiana, refused to extend the fourth amendment's exclusionary rule to probation revocation hearings, stating at page 650:

> "I have no hestitation in stating that probationers are entitled to basic constitutional rights, including protection from illegal searches and seizures. [Citations.] The crux of the question posed here, however, is the *extent* of such rights. '[T]he federal constitutional rights of an accused in a criminal prosecution and the rights of an offender in proceedings on revocation of conditional liberty under parole or probation are not coextensive.' *Brown v. Warden,* 351 F.2d 564, 567 (7th Cir. 1965).

In this case, Lombardino *was* afforded protection from the un-

lawful search and seizure when the marijuana was suppressed and the possession charge dropped. Lombardino's right to be free from 'unreasonable searches and seizures' was recognized to this extent."

In *United States v. Hill* (7th Cir. 1971), 447 F.2d 817, 818, the court held the exclusionary rule does not apply to revocation probation proceedings. Quoting from *Harris v. New York*, 401 U.S. 222, 225, 28 L.Ed. 2d 1, 4, 91 S.Ct. 643, 645, where the Supreme Court stated:

"Assuming that the exclusionary rule has a deterrent effect on proscribed police conduct, sufficient deterrence flows when the evidence in question is made unavailable to the prosecution in its case in chief."

■■ In addition, defendant contends that deterrence is not the only reason for the exclusionary rule. He argues that an important basis for the rule is the "imperative of judicial integrity" announced in *Elkins v. United States*, 364 U.S. 206, 4 L.Ed.2d 1669, 80 S.Ct. 1437. In discussing this principle, Chief Justice Warren explained that "Courts which sit under our Constitution cannot and will not be made party to lawless invasions of the constitutional rights of citizens by permitting *unhindered* governmental use of the fruits of such invasions." (*Terry v. Ohio*, 392 U.S. 1, 13, 20 L.Ed.2d 889, 88 S.Ct. 1868.) (Emphasis added.) We note, however, that other decisions of this high court, such as *Walder v. United States*, 347 U.S. 62, 98 L.Ed. 503, 74 S.Ct. 354, *United States v. Calandra*, —— U.S. ——, 38 L.Ed.2d 561, 94 S.Ct. 613, and *Brown v. United States*, 411 U.S. 223, 36 L.Ed.2d 208, 93 S.Ct. 1565, indicate that some governmental use of illegally seized evidence is constitutionally permissible. In *Calandra*, no mention was made of this "imperative", which led Mr. Justice Brennan to conclude in his dissenting opinion that the court has rejected the "imperative." In view thereof, it appears clear that the "imperative of judicial integrity" is not an ironclad principle. Consistent therewith, it is our belief that the judicial integrity of probation revocation hearings is not impaired by permitting the court to examine all relevant evidence to determine whether a probationer has violated the conditions of his probation.

Finally, defendant relies on *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 64 L.Ed. 319, 40 S.Ct. 182. There, the Supreme Court held grand jury subpoenas to be invalid because they were based on knowledge obtained from illegally seized evidence. Mr. Justice Holmes, writing for the court, stated in dictum at page 392 that: "The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the court, but that it shall not be used at all." The facts of the case at bar differ con-

siderably from *Silverthorne,* where defendant had already been indicted and the subpoenas sought documents for use primarily at the criminal trial. The consequence of the court's decision was to exclude the evidence from the subsequent trial. We note that subsequently in *United States v. Calandra, supra,* the Supreme Court denied the application of the exclusionary rule to grand jury proceedings and, in so doing, stated that the above quoted dictum of Justice Holmes in *Silverthorne* has been substantially undermined by later cases.

In conclusion, we believe that in the best interest of offenders and society, we should decline to embrace a view that would achieve a speculative and, under present conditions, a minimal advance in the deterrence of police misconduct at the expense of substantially impeding the sentencing system. Accordingly, we hold that, under the circumstances here, the constitution does not prohibit the use of illegally seized evidence at probation revocation hearings.

■■ Defendant next contends that the State should have been barred from using the suppressed evidence by the doctrine of collateral estoppel. The doctrine states that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." (*Ashe v. Swenson,* 397 U.S. 436, 443, 25 L.Ed.2d 469, 90 S.Ct. 1189.) We have held in this opinion that the exclusionary rule prohibiting the use of illegally seized items as evidence does not apply to probation revocation hearings. Thus, the question of the legality of the search and seizure was not an issue of ultimate fact at those hearings and, in view thereof, the doctrine of collateral estoppel does not apply.

Finally, defendant argues that he was placed in double jeopardy by the use of the suppressed evidence at the probation revocation hearing. We disagree, and we believe that the cases cited by the State are controlling.

■■ In *People v. Whittaker,* 101 Ill.App.2d 432, 243 N.E.2d 467, the court held that although the defendant was acquitted of a murder charge, the occurrences that resulted in the murder could be considered at a probation revocation hearing. In *People v. Kostaken,* 16 Ill.App.2d 395, 148 N.E.2d 615, where it was contended on appeal from an order revoking probation that defendant had been placed in double jeopardy, the court held that one who is on probation is not in the same category as one charged by information or indictment. So, also, in *People v. Kuduk,* 320 Ill.App. 610, 51 N.E.2d 997, the reviewing court rejected defendant's *res judicata* contention where, after he was acquitted of a manslaughter charge, the evidence of such charge was heard in proceedings to revoke his probation.

For the reasons stated, the revocation of defendant's probation is affirmed.

Affirmed.

DRUCKER and LORENZ, JJ., concur.