**STATE of Minnesota, Respondent,**

v.

**Glenn Arnold EARNEST, Appellant.**

**No. 48128.**

Supreme Court of Minnesota.

April 11, 1980.

C. Paul Jones, Public Defender, and Robert E. Oliphant, Asst. Public Defender, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., Thomas L. Fabel, Deputy Atty. Gen., and Gary S. Hansen, Sp. Asst. Atty. Gen., St. Paul, David C. Johnson, County Atty., International Falls, for respondent.

Heard, considered, and decided by the court en banc.

KELLY, Justice.

Defendant appeals from an order revoking a stay of execution of his prison sentence for theft which was based upon findings that he violated the terms of his probation. The critical issue presented is whether the trial court erred in admitting evidence seized in a warrantless search of defendant's dwelling by his probation officer over objection that the search violated defendant's Fourth Amendment rights. We hold that the evidence was admissible on the issue of whether defendant violated the conditions of probation and that the trial court properly exercised its discretion in ordering defendant's imprisonment.

On May 20, 1976, a jury convicted defendant of theft of a toolbox valued at slightly over $200. He was sentenced to 5 years imprisonment with execution stayed for 5 years and supervised probation ordered for that period. As conditions of the probation, the trial court required that defendant (1) maintain good behavior and violate no law or ordinance; (2) obey all written rules and regulations of the commissioner of corrections; and (3) spend the first year of probation at the Northeast Correctional Center at Saginaw, Minnesota. Defendant also signed a Department of Corrections probation agreement form, thereby agreeing to obey all laws, to obtain the probation officer's approval before changing employment, and to report to the probation officer monthly. On May 25, 1977, the commissioner of corrections recommended that the stay of sentence be vacated, alleging four violations: (1) termination of employment without permission; (2) failure to report, (3) assault, and (4) illegal possession of a controlled substance. Pursuant to Minn.Stat. § 609.14 (1976), which sets forth the procedures governing revocation of probation, the trial court revoked the stay of execution and ordered the defendant taken into immediate custody. At defendant's request, a hearing was held to determine whether his probation should be revoked and execution of sentence ordered.

Testimony at the revocation hearing established the following facts. Early in December 1976 defendant was released from the corrections center because of good progress. Although he subsequently reported to his probation officer only intermittently, the probation officer was satisfied with his progress for 3 or 4 months. In late April or early May 1977 defendant, with the probation officer's assistance, obtained employment. Approximately 2 weeks later he called his employer and told

her that he had a sore back and would not be able to work that day. The following workday, a Monday, his mother called with a similar message. Defendant, displeased with her handling of the conversation, swore and threw his breakfast at her. His father testified that on other occasions defendant swore and swung at him as if to start a fight. Defendant remained absent from work for a week but made no further explanation to his employer nor did he contact his probation officer. A doctor's statement was introduced to substantiate defendant's having a back problem. During this time, however, defendant was able to travel to Bemidji and Minneapolis.

In early May 1977 the probation officer received information from another probationer and from local law enforcement authorities that defendant was using and selling drugs. The officer also saw a small notebook containing a list of names and figures, with notations such as "149 caps" and "made $155," which the county sheriff had found in the glove compartment of a vehicle, later identified as defendant's, while attempting to ascertain the vehicle's owner in response to a night complaint that it was parked in a private driveway.[1] On the morning of May 13 the probation officer went to defendant's apartment to inquire about his involvement with drugs and to discuss the employment and family problems which had come to his attention. He knocked and was admitted. The officer testified that defendant appeared very nervous when asked if he had any drugs in his possession. Two young persons were asleep in the living room. Upon defendant's refusal of his request to search the apartment, the probation officer searched without consent. He did not have a warrant. In a bureau in defendant's bedroom the officer found and seized capsules con-

---

1. At the hearing, the notebook was admitted into evidence to establish reasonable grounds for the apartment search. Defense counsel objected to its admission as unconstitutional and lacking proper foundation. At the close of the hearing, however, he conceded that independent reports and the defendant's behavior showed that the probation officer had a reasonable suspicion that defendant possessed drugs at the time he visited the apartment. At oral argument before this court, defense counsel conceded further that the officer had probable cause to search without the notebook. We therefore, need not consider the legality of the search of the automobile and the seizure of the notebook.

taining a white powder which laboratory tests later showed to be amphetamine.

The trial court found that the defendant had violated the terms of probation in three respects: (1) by terminating employment without permission, (2) by committing assaults upon his parents, and (3) by illegally possessing a controlled substance. It concluded that the first two violations were insufficient to require revocation, but that the third violation "alone and in combination with the other two" required it. On June 3, 1977, the court issued an order vacating the stay of sentence and ordering defendant's imprisonment. The order was "premised upon the proposition that a court may properly consider in * * * [revocation] proceedings evidence obtained as a result of a warrantless search by the probation officer of the residence of a probationer * * * at least * * * where the probation officer has, as here, acted upon a reasonable ground for suspecting the probationer to be concealing contraband."

Defendant seeks reversal of the order, claiming (1) erroneous admission of evidence seized in the warrantless search of his apartment in alleged violation of his Fourth Amendment rights; (2) insufficient evidence to support the findings of violation of the terms and provisions of his probation; and (3) improper comment by the prosecutor upon his failure to testify at the revocation hearing.

1. Although the search and seizure of the amphetamines in this case was conceded to have been based on probable cause, it is clear that no warrant was obtained and that the search did not fall under any of the well known warrant requirement exceptions. The defendant thus contends that the search and seizure was unlawful, and that the evidence should have been excluded at the probation revocation proceeding.

■ It has been recognized that the relationship between a probation officer and his probationer is a special one. *Latta v. Fitzharris*, 521 F.2d 246, 249 (9th Cir.), *cert. denied*, 423 U.S. 897, 96 S.Ct. 200, 46 L.Ed.2d 130 (1975).[2] The efficient functioning of the probation system requires the probation officer to work toward rehabilitation of one convicted of a crime while at the same time, protecting the public interest. *State v. Tarrell*, 74 Wis.2d 647, 652, 247 N.W.2d 696, 700 (1976). In order to accomplish these ends, the probation officer must have thorough up-to-date knowledge of the probationer's personal habits, relationships, and activities. See *Latta v. Fitzharris*, 521 F.2d at 249. Although we agree that probation searches fall within the ambit of the Fourth Amendment, and must therefore comport with a standard of reasonableness, see *Latta v. Fitzharris*, 521 F.2d at 248–9; *People v. Anderson*, 189 Colo. 34, 37, 536 P.2d 302, 304–05 (1975), we also recognize that, because of this special relationship between the probation officer and probationer, the law relating to probation searches cannot be strictly governed by automatic reference to ordinary search and seizure law. *Latta v. Fitzharris*, 521 F.2d at 251; *People v. Anderson*, 189 Colo. at 37–38, 536 P.2d at 304–05; *State v. Tarrell*, 74 Wis.2d at 652–56, 247 N.W.2d at 700–01; Annot., 32 A.L.R.Fed. 155, 162–64 (1977).[3]

**2.** *Latta* deals with parole, but we see no material distinction, for the purposes of this case between the probation and parole systems. *See, e. g., Seim v. State*, Nev., 590 P.2d 1152, 1154 (1979).

**3.** Professor LaFave, in his treatise on search and seizure, discusses various theories underlying this special treatment of probationers and parolees: The "constructive custody" theory which for the purposes of search and seizure law assumes that a parollee is in the same position as a person incarcerated in prison, 3 W. LaFave, *Search and Seizure* § 10.10(a), at 424 (1978); The "Act of Grace" theory, which states that a parollee or probationer has no right to expect parole or probation and that, if he accepts the favor of parole or probation, he accepts it subject to any subsequent surveillance or warrantless intrusions that are needed, *id.* § 10.10(b), at 426–7; The "waiver" theory, which grounds the search in an express waiver of the probationer's fourth amendment rights made at the time of probation, *id.* § 10.10(b), at 427–31; and the "balancing" theory of "administrative search" cases such as *Camara v. Municipal Court*, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967), *id.* § 10.10(c), at 431–5. We note that the "administrative search " theory appears to be more rational than the others

In *Latta v. Fitzharris*, 521 F.2d 246, 247–50 (9th Cir.), *cert. denied*, 423 U.S. 897, 96 S.Ct. 200, 46 L.Ed.2d 130 (1975), the Ninth Circuit listed several reasons that apply to justify a warrantless search by a probation officer of his probationer, among them, the pervasiveness of the regulation to which the probationer is subject, the lowered expectation of privacy of the probationer, and the demands of the probation relationship.[4] To these considerations, it might be added that putting onerous restrictions on the ability of a probation officer to protect the public interest may actually deter courts from a judicious use of probation in the future in marginal cases. A court's uncertainty as to the ability of a probation officer to supervise his probationers closely may tip the balance when it comes to sentencing.

■ Because of these considerations, we hold that the warrantless search under the circumstances of this case was reasonable for the purposes of the Fourth Amendment.[5] We therefore do not reach the question whether the exclusionary rule is applicable in a probation revocation proceeding. Since the search was lawful, the admission of evidence in the probation revocation proceeding was proper.[6]

■ 2–3. The other issues raised by defendant on appeal relate to the sufficiency of the evidence and to the fact that in his closing statement to the court the prosecutor commented upon defendant's failure to take the stand. There is no merit to defendant's contention that the evidence was insufficient to warrant revocation. We agree that the prosecutor's comment was improper—see, Minn.Stat. § 611.11 (1976)—but because the comment was made to a trial judge rather than a jury and because the impropriety of the comment was called

---

and most likely to produce results consistent with underlying fourth amendment principles. However, the particular theory chosen upon which the decision is based is of no consequence if the decision is the correct one.

4. There are at least two cases that are to the contrary. *United States v. Workman*, 585 F.2d 1205 (4th Cir. 1978); and *People v. Jackson*, 46 N.Y.2d 171, 385 N.E.2d 621, 412 N.Y.S.2d 884 (1978). However, under the facts and circumstances of this case *Latta v. Fitzharris*, 521 F.2d 246 is to us more persuasive.

5. We need not decide whether a lesser standard of probable cause applies to searches of this type. *See* note 1 *supra*; *cf. Latta v. Fitzharris*, 521 F.2d 246, 251 (9th Cir.) *cert. denied*, 423 U.S. 897, 96 S.Ct. 200, 46 L.Ed.2d 130 (1975) (suggesting that a mere "hunch" may be sufficient). Nor need we decide the legality of a warrantless probation search in which police officers participate. *See* Annot., 32 A.L.R.Fed. 155, 177–81 (1977).

6. The special concurrence here would characterize the acts of the probation officer in this case as a violation of the Constitution of the United States. We doubt that probation officers would want to perform acts labeled as a violation of our Constitution even though no sanctions are imposed. Thus, from a psychological standpoint, we could make the performance of a probation officer's duties more difficult and less effective. In turn, this may result in fewer probations or less protection for the public where probation has been granted. The probation officer, in supervising his charges, is of necessity thrust into a prosecutor's role. He is the person expected to report to the court and make charges whenever any serious violation of the conditions of parole or probation occur. Customarily, this includes the commission of new crimes. Thus, we give no new role to probation officers by our decision in this case.

If it turns out that our decision permits the use of the evidence seized in a new prosecution, so be it. On the facts presented in this case it should be admissible in a new prosecution. However, the answer may not be that simple. For instance, what if the defendant is able in another prosecution to introduce new and different evidence concerning the events leading up to the search and seizure. Will he be estopped from doing so? Should we decide the admissibility of the evidence now for a case that has not been presented to us and may involve differing facts and undecided legal issues? Whether this court would exclude evidence obtained by a warrantless search and seizure initiated and carried out by the police although accompanied by a probation officer but without any probable cause to believe that a probation violation is being or has been committed remains to be seen. Other courts have excluded evidence where the search and seizure, ostensibly on the grounds of a probation violation, was a subterfuge for a police raid with just a pretext that there might be a probation violation. Obviously, the best course of action for probation officers and police is to obtain a warrant whenever it is possible to do so.

to the court's attention by defendant's counsel, we find no prejudice to defendant's rights warranting reversal. *See, State v. Spencer*, 311 Minn. 222, 248 N.W.2d 915 (1976).

Affirmed.

ROGOSHESKE, Justice (concurring specially).

While I agree with the disposition of this appeal, I feel compelled to express two concerns with the approach taken by the majority. First, since the majority holds the search constitutionally permissible, the evidence seized as a result of the search is by implication admissible not only in a probation revocation proceeding but in a prosecution for a new offense. Second, *Latta v. Fitzharris*, 521 F.2d 246 (9th Cir.), *cert. denied*, 423 U.S. 897, 96 S.Ct. 200, 46 L.Ed.2d 130 (1975), relied upon by the majority, adopts a reasonableness standard which authorizes a search of a parolee's dwelling by his parole officer on facts insufficient to support a finding of probable cause.

In constitutional law it is fundamental that "searches conducted outside the judicial process, * * * are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established * * * exceptions." *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967).[1] This protection has been extended to probationers where the search was conducted by a person other than a probation officer. *United States v. Consuelo-Gonzalez*, 521 F.2d 259 (9th Cir. 1975). The majority agrees that the fourth amendment applies but concludes that the pervasiveness of probation regulation, the demands of the probation relationship, the probationer's lowered expectation of privacy, and protection of the public interest render a warrantless search reasonable

when based upon probable cause. I am persuaded, however, that rehabilitation, the goal of the probation system, is not advanced by adopting a rule that allows probation officers by reason of their special status to make warrantless searches of a probationer's dwelling which the police could not make when the effect is to gather evidence of crime rather than to corroborate information that a probationer was violating the terms of his probation. By holding such searches of a probationer's dwelling constitutional, the majority has enabled probation officers to assume a prosecutorial role unintended by the probation system, since once evidence is lawfully seized it cannot be excluded in a subsequent criminal prosecution. *Latta v. Fitzharris*, 521 F.2d 246 (9th Cir.), *cert. denied*, 423 U.S. 897, 96 S.Ct. 200, 46 L.Ed.2d 130 (1975), the principal case relied upon by the majority, presents those facts. Although the majority apparently assumes that its holding is restricted to probation revocation proceedings and that the rule might be different if the proceeding were a criminal prosecution, in fact both questions are decided in that there is no legal basis for holding evidence constitutionally obtained admissible in one proceeding and not another. The possible use of evidence is not an aspect of the reasonableness of a search. I would, therefore, hold the search in violation of the fourth amendment.

Inquiry does not stop, however, with the determination that a search is unconstitutional, since the fruits of an illegal search may be used for purposes that do not contravene the policies underlying the exclusionary rule. The exclusionary rule requires that evidence obtained by an illegal search cannot be used in a criminal prosecution, *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). Although there is a split of authority on whether the

1. None of the elements which would validate a warrantless search of a dwelling is applicable here. *See, Davis v. United States*, 328 U.S. 582, 593, 66 S.Ct. 1256, 1261, 90 L.Ed. 1453 (1946) (search with consent); *Chimel v. California*, 395 U.S. 752, 766, 89 S.Ct. 2034, 2041, 23 L.Ed.2d 685 (1969) (limited search incident to lawful arrest); *Warden v. Hayden*, 387 U.S. 294, 298, 87 S.Ct. 1642, 1645, 18 L.Ed.2d 782 (1967) (search in "hot pursuit"); *McDonald v. United States*, 335 U.S. 451, 454, 69 S.Ct. 191, 192, 93 L.Ed. 153 (1948) (search in exigent circumstances); *Coolidge v. New Hampshire*, 403 U.S. 443, 466, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971) (seizure of evidence in plain view).

exclusionary rule applies to probation revocation proceedings, those cases holding the rule inapplicable are, in my opinion, better reasoned.[2]

Probation revocation proceedings are governed by statute, and the inquiry assigned to the trial court is a narrow one. Minn.Stat. § 609.14, subd. 2 (1978) requires written notice to the defendant of the alleged grounds upon which the stay of sentence was revoked and, if requested, "a summary hearing * * * thereon at which he is entitled to be heard and to be represented by counsel." The issue, which involves elements of factfinding and exercise of discretion, is whether "the defendant has violated any of the conditions of his probation or has otherwise been guilty of misconduct which warrants the imposing or execution of sentence * * *." Minn. Stat. § 609.14, subd. 1 (1978). Thus, in this case where the trial court based revocation primarily upon defendant's failure to obey the law by illegally possessing drugs, the state was required to reasonably satisfy the judge that probationer violated the condition to obey the law or to maintain good behavior, such that he failed to act with regard to the safety of society entitling him to remain free from imprisonment.

In *Morrissey v. Brewer*, 408 U.S. 471, 489, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484 (1972), the United States Supreme Court held that parolees are not without minimum due-process protection but underscored the fact that parole revocation is not equivalent to criminal prosecution:

We emphasize there is no thought to equate this second stage of parole revocation to a criminal prosecution in any sense. It is a narrow inquiry; the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial.

*See Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). In my opinion, this distinction, acknowledged by the United States Supreme Court and embodied in our statutes, supports the conclusion that the exclusionary rule does not apply to probation revocation proceedings.

Moreover, the United States Supreme Court has refused to apply the exclusionary rule where it does not serve the dual purposes of deterring future unlawful police misconduct and preserving the integrity of the courts.[3] A probation officer has unannounced access to his client's environment to enable him to assess and guide his proba-

2. *See, e. g., United States v. Winsett*, 518 F.2d 51 (9th Cir. 1975); *United States v. Hill*, 447 F.2d 817 (7th Cir. 1971); *United States v. Allen*, 349 F.Supp. 749 (N.D.Cal.1972); *United States ex rel. Lombardino v. Heyd*, 318 F.Supp. 648 (D.La.), aff'd, 438 F.2d 1027 (5th Cir. 1970), *cert. denied*, 404 U.S. 880, 92 S.Ct. 195, 30 L.Ed.2d 160 (1971); *State v. Sears*, 553 P.2d 907 (Alaska 1976); *Croteau v. State*, 334 So.2d 577 (Fla.1976); *State v. Caron*, 334 A.2d 495 (Me.1975); *People v. Dowery*, 20 Ill.App.3d 738, 312 N.E.2d 682 (1974), aff'd, 62 Ill.2d 200, 340 N.E.2d 529 (1974); *State v. Thorsness*, 165 Mont. 321, 528 P.2d 692 (1974); *Stone v. Shea*, 113 N.H. 174, 304 A.2d 647 (1973); *see also* Annotation, 77 A.L.R.3d 636, §§ 3, 6(a) (1977); Annotation, 30 A.L.R.Fed. 824, § 3 (1976); Cole, *The Exclusionary Rule in Probation and Parole Revocation Proceedings: Some Observations on Deterrence and the "Imperative of Judicial Integrity,"* 52 Chi.-Kent L.Rev. 21, 26 (1975).

3. The twin purposes of deterring future unlawful police conduct and preserving the integrity of the courts were announced in *Elkins v. Unit-*

*ed States*, 364 U.S. 206, 217, 222, 80 S.Ct. 1437, 1444, 1446, 4 L.Ed.2d 1669 (1960).

The application of the rule has been limited in the following cases: *United States v. Calandra*, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974) (not extended to grand jury questioning based upon illegal evidence); *Brown v. United States*, 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973), and *Alderman v. United States*, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969) (no standing to invoke rule where evidence is not used against victim of unlawful search); *Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), and *Walder v. United States*, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954) (not extended to discrediting of defendant's voluntary testimony); *United States v. Schipani*, 435 F.2d 26 (2nd Cir. 1970), *cert. denied*, 401 U.S. 983, 91 S.Ct. 1198, 28 L.Ed.2d 334 (1971) (not extended to sentencing after application in trial). *But see, Verdugo v. United States*, 402 F.2d 599 (9th Cir. 1968), *cert. denied*, 402 U.S. 961, 91 S.Ct. 1623, 29 L.Ed.2d 124 (1971) (applicable *in sentencing* where police purpose was to secure additional evidence in order to enhance sentence).

tioner's progress. His purpose is primarily to counsel his client and secondarily to enforce the terms of probation in the public interest. In my view, application of the exclusionary rule would hamper the effective functioning of the probation system rather than deter unlawful conduct. I would, however, require that the probation officer be able to articulate concrete facts giving reasonable cause to believe that evidence would be found in the place to be searched and that the search not be needlessly intrusive in time or manner. This approach would permit fulfillment of the objectives of the probation system without tempting the police to use probation officers to acquire evidence that the police could not lawfully obtain without a warrant.

I am also concerned that the majority's reliance on *Latta v. Fitzharris*, 521 F.2d 246 (9th Cir.), *cert. denied*, 423 U.S. 897, 96 S.Ct. 200, 46 L.Ed.2d 130 (1975), may be read too broadly. *Latta* upheld against a fourth amendment challenge a parole officer's search of a parolee's residence based upon a reasonable belief that the search was necessary in the performance of his duties. The court stated that the facts supporting the search need not be sufficient to sustain a finding of probable cause. Since probable cause for the search was admitted in the present case, I would hope that our disposition is not interpreted as authorizing a warrantless search of a probationer's dwelling when the facts are insufficient to support a finding of probable cause.

OTIS, Justice (concurring specially).

I agree with the opinion of Mr. Justice Rogosheske.

YETKA, Justice (concurring specially).

I agree with the opinion of Mr. Justice Rogosheske.

WAHL, Justice (concurring specially).

I agree with the opinion of Mr. Justice Rogosheske.