288 So.2d 264 (1974)
Anthony PESCE, Appellant,
v.
STATE of Florida, Appellee.
No. 72-1006.
District Court of Appeal of Florida, Fourth District.
January 18, 1974.
*265 James M. Campbell, Law Offices of J. Russell Hornsby, Orlando, for appellant.
Robert L. Shevin, Atty. Gen., Tallahassee, Nelson E. Bailey, Stephen Koons and C. Marie Bernard, Asst. Attys. Gen., West Palm Beach, for appellee.
WALDEN, Judge.
Appellant was tried by jury and convicted of two counts of violating the gambling statute, Section 849.01, F.S. 1971, F.S.A. We reverse and remand with instructions that appellant be discharged.
We find merit in part 1 of appellant's Point I, only. It is a challenge to the adequacy of the affidavit upon which the search warrant dated June 7, 1972, was based. That affidavit provided:
[1] "Your affiant is a Police Officer and has been employed by the Orlando Police Department as such for the past seven (7) years. Your affiant is currently assigned to the Vice Section and has been so assigned for the past year. During this time, your affiant has had occasion to make investigations concerning illegal gambling activities, many of which have resulted in convictions of various defendants in both City of Orlando Municipal Court and in the Criminal Court of Record of Orange County, Florida.
[2] "During the period beginning in February of 1972 until the present time, your affiant has received information from several reliable sources which stated that a gambling game known as poker, played with cards for money, is being conducted every Wednesday night at the above described premises. The reliable sources further stated that a light would be burning at the front, outside, of the above premises on Wednesday night if the game was in progress. The reliable sources further gave your affiant the names of certain persons who attend this game on a regular basis. The reliable sources further related to your affiant that this game was conducted by Anthony Pesce, who is in fact the owner of the above premises.
[3] "During the period of time indicated above, surveillances have been conducted upon the above described premises. During these surveillances, several persons whose names were given to your affiant as participants in the above mentioned poker game have been observed entering the above described premises on Wednesday nights. It has been further observed, that persons whose names were given as participants, have had vehicles which were registered to them, parked on Hyer Avenue in very close proximity to the above described residence, on Wednesday nights.
[4] "The light which is supposed to be burning outside the above residence if the game is in progress has been observed burning on Wednesday nights, and has not been turned on on any other night.

*266 [5] "It is further known by your affiant that on one occasion during the above period of time, that your affiant placed a telephone call to the above described residence and advised the person who answered the phone that the house was going to be raided by the Police Department. At this time, Sgt. Tom Wylie and Inv. Crystal Graham were in a position of surveillance and observed several persons depart from the above described premises shortly after they were notified of an alleged impending raid.
[6] "It is further known by your affiant that on December 2nd, 1970, a Wednesday, Mr. Anthony Pesce made an official report to the Orlando Police Department of an attempted armed robbery of a card game which was in progress on that date. Mr. Pesce is quoted in this report as having said that he has several people who play cards regularly at his home and that some of these players have flashed quite a bit of money around at times." (Paragraph numbers supplied.)
Simply stated, the affidavit does not reflect probable cause under Section 933.04, F.S. 1971, F.S.A. Thus, the resulting warrant was defective and the items and evidence seized thereunder should have been suppressed.
Looking now at the affidavit, Paragraph 1 is prefatory and affords no weight. Paragraph 2 has to do with the confidential informants and constitutes the gravamen of the affidavit. It is notable for its vagueness and we can not tell from it whether the affiant had one or ten informants. We can not tell if all supplied the condemning information or if it was piecemeal. Further, and more importantly, we are unable to determine whether the so-called "reliable sources" or any of them perceived the fact or facts asserted, or whether these incriminating assertions were hearsay, simple or gross, based upon second, tenth, or twentieth hand accounts, or a mixture thereof. The Supreme Court in Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969) conceded that hearsay could result in probable cause but only if some satisfactory attempt is made to prove that an informant is reliable. The attempt here was unsuccessful.
It is to be noted also that the paragraph is subject to criticism because the dates on which affiant has received information are not stated with particularity. A firsthand glean would indicate that gambling was conducted every Wednesday night from February 1972 until June 1972, a period of approximately eighteen weeks. Did affiant receive his information every Thursday morning of each week? Or was there a guesswork basis for the statement? Clearly a February 1972 event would be stale with reference to a June 1972 warrant. Hamelmann v. State, Fla. App. 1959, 113 So.2d 394.
And now to the most critical evaluation of the "reliable" sources' information; it must be determined that it be treated as unsupported hearsay at best. This being true, then there must be corroboration to supply a good reason for believing it. Spinelli v. United States, supra; Andersen v. State, Fla. 1973, 274 So.2d 228; State v. Smith, Fla. 1970, 233 So.2d 396. In Spinelli the Federal Supreme Court said:
"... If the tip is found inadequate under Aguilar [v. Texas], [378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964)], the other allegations which corroborate the information contained in the hearsay report should then be considered. At this stage as well, however, the standards enunciated in Aguilar must inform the magistrate's decision. He must ask: Can it fairly be said that the tip, even when certain parts of it have been corroborated by independent sources, is as trustworthy as a tip which would pass Aguilar's tests without independent corroboration?"
*267 And in Andersen the Florida Supreme Court quoted Justice White's concurrence in Spinelli which "succinctly stated Aguilar's principle to be:
"`If the affidavit rests on hearsay  an informant's report  what is necessary under Aguilar is one of two things: the informant must declare either (1) that he has himself seen or perceived the fact or facts asserted; or (2) that his information is hearsay, but there is good reason for believing it.'" (Emphasis supplied by Florida Supreme Court.)
Looking at Paragraphs 3 and 4, we feel that such attempt at corroboration was an insufficient showing because, although surveillances were conducted, it is not stated by whom such surveillances were conducted. Was it by the so-called "reliable sources"? Was it by the affiant, or was it most likely conducted by some of his associates on the police force? Simply stated again, we feel that this must be likewise treated as hearsay rather than firsthand corroboration by the affiant under oath. Such hearsay corroboration can not serve to validate the unsupported and hearsay informant testimony. Spinelli, supra.
Next we come to Paragraph 5. If corroboration is to be found, it is here, because clearly the affiant had some firsthand knowledge. As reflected, a phone call was made to the premises. Advice was given that there would be a raid and several persons departed. We opine that this is clearly insufficient to justify a finding of probable cause to issue a search warrant because the incident is too tenuous to support a conclusion that illegal activity was taking place. We think it equally foreseeable that visitors even at an innocent gathering would be predictably likely to remember some pressing business elsewhere upon being told that a police raid was imminent. Another defect is that the events in this paragraph were not given a date and, hence, could have been accomplished in stale fashion as early as February 1972.
Finally, we turn our gaze to Paragraph 6 of the affidavit. It is fatally stale. Hamelmann v. State, supra. That court held that a six month's lapse between an affidavit execution and a warrant issuance rendered the latter invalid because it followed that six months at least had elapsed between the occurrence and the warrant and:
"... while there is no strict rule as to the permissible number of days which may elapse between the date of the observed offense and the making of the affidavit upon which the search warrant is based, the nearer the time is at which the observation was made to the time when the affidavit is or was executed, the more probable it is that a conclusion of probable cause may be justified."
We have considered the allegations singly and in combination and from our analysis we conclude that the affidavit was insufficient to reflect probable cause of the existence of gambling in the appellant's premises as prohibited in Section 849.01, F.S. 1971, F.S.A., and the evidence seized under the search warrant must be suppressed under authority of Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), and Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).
We reverse and remand with instructions that appellant be discharged.
Reversed and remanded.
OWEN, C.J., concurs.
MAGER, J., dissents, with opinion.
MAGER, Judge (dissenting):
The issue with respect to the search warrant is whether the affidavit provided the necessary "probable cause" upon which a search warrant could be based. In my view, the representations contained in the affidavit, as set forth in the majority opinion, reflect the existence of the required probable cause for the issuance of a search warrant.
*268 The rule generally applied in determining the existence of probable cause for the issuance of a search warrant is that the affidavit must state facts or sufficient reasons upon which the officer believed or had reason to believe that the laws were being violated by the defendant. State v. Lewis, Fla.App. 1969, 225 So.2d 170; Paula v. State, Fla.App. 1966, 188 So.2d 388; Suiero v. State, Fla.App. 1971, 248 So.2d 219. An affidavit which is based upon information received from a reliable confidential informant is proper; such an affidavit need not even allege that the informant is a reliable source. State v. Lewis, supra. A search warrant may be issued on the strength of an affidavit which, although otherwise deficient with reference to information received from an informant, is based upon the personal observations of the affiant. State v. Smith, Fla. 1970, 233 So.2d 396.
The facts and circumstances in the case sub judice reflect an affidavit based upon both an informant's report and personal observations of the affiant which readily make this case distinguishable from Andersen v. State, Fla. 1973, 274 So.2d 228, cited by the majority. There, the affidavit upon which the search warrant was issued was based entirely on hearsay, i.e., an informant's report; consequently, the principles set forth in Andersen with respect to measuring the reliability of an informant's report are simply not applicable to the case sub judice.
In ascertaining whether the affidavit in the case sub judice was legally sufficient it is important to observe the standard by which "probable cause" is measured. In State v. Smith, supra, the Florida Supreme Court quoting from Spinelli v. United States, 1969, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637, stated, 233 So.2d, at p. 398:
"`[W]e do not retreat from the established propositions that only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause * * *; that affidavits of probable cause are tested by much less rigorous standards than those governing the admissibility of evidence at trial * * *; that in judging probable cause issuing magistrates are not to be confined by niggardly limitations or by restrictions on the use of their common sense * * *; and that their determination of probable cause should be paid great deference by reviewing courts * * *.'"
In United States v. Ventresca, 1965, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684, the Supreme Court of the United States stated:
"While a warrant may issue only upon a finding of `probable cause,' this Court has long held that `the term "probable cause" * * * means less than evidence which would justify condemnation,' ... and that a finding of `probable cause' may rest upon evidence which is not legally competent in a criminal trial. .. ."
Continuing further, the United States Supreme Court observed, 85 S.Ct. at p. 745:
"`There is a large difference between the two things to be proved [guilt and probable cause], as well as between the tribunals which determine them, and therefore a like difference in the quanta and modes of proof required to establish them.'"
The Court additionally stated, 85 S.Ct. at p. 746:
"This is not to say that probable cause can be made out by affidavits which are purely conclusory, stating only the affiant's or an informer's belief that probable cause exists without detailing any of the `underlying circumstances' upon which that belief is based. See Aguilar v. State of Texas, supra. Recital of some of the underlying circumstances in the affidavit is essential if the magistrate is to perform his detached function and not serve merely as a rubber stamp for the police. However, where these circumstances are detailed, where reason for crediting the source of the information *269 is given, and when a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hyper-technical, rather than a commonsense, manner. Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants. Jones v. United State, supra, 362 U.S., 257, at 270, 80 S.Ct. 725, at 735, 4 L.Ed.2d 697." (Emphasis added.)
The matters set forth in the affidavit in the case sub judice are entirely distinguishable from those found to be deficient in Spinelli v. United State, supra, but more closely analogous to the situation present in Draper v. United States, 1959, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327. In Spinelli the warrant was found to be deficient because the affidavit contained a reference to information received from a confidential informant which offered no basis for the informant to conclude that the defendant was involved in a gambling operation except the informant's knowledge that the defendant had two telephones assigned to him. The Spinelli affidavit was not bolstered by an F.B.I. agent's representation that defendant operated out of an apartment having two telephones and was a known bookmaker or known to consort with bookmakers; there was no basis upon which a magistrate could infer that the informant had gained his information in a reasonable way. The Supreme Court stated, in part, 89 S.Ct. at p. 587:
"... First, the application failed to set forth any of the `underlying circumstances' necessary to enable the magistrate independently to judge of the validity of the informant's conclusion that the narcotics were where he said they were. Second, the affiant-officers did not attempt to support their claim that their informant was `credible' or his information `reliable'."

The Supreme Court, however, went on to compare the Spinelli affidavit with the affidavit presented in Draper v. United States, supra, which affidavit, while not stating the manner in which the informant gained the information, contained sufficient detail from which a magistrate "could reasonably infer that the informant had gained his information in a reliable way". In this connection, the Spinelli Court stated, 89 S.Ct. at pp. 589, 590:
"... At most, these allegations indicated that Spinelli could have used the telephones specified by the informant for some purpose. This cannot by itself be said to support both the inference that the informer was generally trustworthy and that he had made his charge against Spinelli on the basis of information obtained in a reliable way. Once again, Draper provides a relevant comparison. Independent police work in that case corroborated much more than one small detail that had been provided by the informant. There, the police, upon meeting the inbound Denver train on the second morning specified by informer Hereford, saw a man whose dress corresponded precisely to Hereford's detailed description. It was then apparent that the informant had not been fabricating his report out of whole cloth; since the report was of the sort which in common experience may be recognized as having been obtained in a reliable way, it was perfectly clear that probable cause had been established."
Although the majority of the Supreme Court found the Spinelli affidavit to be deficient, Mr. Justice White, who voted to reverse in order to avoid a divided opinion, felt that the "fair inference" approach established by Draper would render the Spinelli affidavit sufficient. In this regard Mr. Justice White observed, 89 S.Ct. at p. 595:
"The tension between Draper and the Nathanson-Aguilar line of cases is evident from the course followed by the majority opinion. First, it is held that the report from a reliable informant that *270 Spinelli is using two telephones with specified numbers to conduct a gambling business plus Spinelli's reputation in police circles as a gambler does not add up to probable cause. This is wholly consistent with Aguilar and Nathanson: the informant did not reveal whether he had personally observed the facts or heard them from another and, if the latter, no basis for crediting the hearsay was presented. Nor were the facts, as Mr. Justice HARLAN says, of such a nature that they normally would be obtainable only by the personal observation of the informant himself. The police, however, did not stop with the informant's report. Independently, they established the existence of two phones having the given numbers and located them in an apartment house which Spinelli was regularly frequenting away from his home. There remained little question but that Spinelli was using the phones, and it was a fair inference that the use was not for domestic but for business purposes. The informant had claimed the business involved gambling. Since his specific information about Spinelli using two phones with particular numbers had been verified, did not his allegation about gambling thereby become sufficiently more believable if the Draper principle is to be given any scope at all? I would think so, particularly since information from the informant which was verified was not neutral, irrelevant information but was material to proving the gambling allegation: two phones with different numbers in an apartment used away from home indicates a business use in an operation, like bookmaking, where multiple phones are needed. The Draper approach would reasonably justify the issuance of a warrant in this case, particularly since the police had some awareness of Spinelli's past activities. The majority, however, while seemingly embracing Draper, confines that case to its own facts. Pending full-scale reconsideration of that case, on the one hand, or of the Nathanson-Aguilar cases on the other, I join the opinion of the Court and the judgment of reversal, especially since a vote to affirm would produce an equally divided Court." (Emphasis added.)
The affidavit in the case sub judice is based upon information received from a confidential informant and personal observations. See State v. Smith, and Suiero v. State, supra. The affiant stated that he had received information from reliable sources that during a period beginning in February of 1972 until the present time (presumably the time the request for the search warrant was made, i.e., June 7, 1972) a ganbling game was being conducted every Wednesday night at the defendant's premises. The informant's information was that a light would be burning on the from porch only on Wednesday nights which would indicate that a game was in progress. The informant's information furnished the names of persons who attended the game on a regular basis.
The affidavit further reflects that the law enforcement officers conducted surveillances during the same period mentioned by the confidential informant. It was during these surveillances that the names of the persons given by the informant to the affiant were verified; it was during the same period that these persons were observed entering the premises on Wednesday night; and it was during this same period that the light was observed burning only on Wednesday night. In addition, the affiant personally stated that he placed a call to the residence under surveillance advising the person who answered that the place was going to be raided. The officers in a position of surveillance observed several persons departing shortly after the phone call. The affidavit is not a model of specificity with reference to the dates on which the surveillance of the premises was conducted making, instead, a general reference to a period "beginning in the period of February 1972 until the present time" (presumably June 7, the date on which the warrant was issued). The allegations, however, sufficiently reflect a continuing violation "right up to the time *271 the warrant was issued"; "Under the circumstances the failure to specify a date does not render the affidavit defective." Borras v. State, Fla. 1969, 229 So.2d 244.
The sum total of allegations of the affidavit for search warrant and the circumstances surrounding the information received by the affiant, coupled with his personal observations, "were sufficient to cause a prudent man of affiant's experience" to believe that defendant was using his home for illegal activities. Dixon v. State, Fla.App. 1965, 180 So.2d 681. The affidavit, in the case sub judice, is based on something more than mere conclusions or mere suspicions of both the informant and the affiant. Compare Aguilar v. Texas, 1964, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723.
The rationale of Draper, Aguilar and Spinelli, as applied to the facts and circumstances of this case, support the propriety and legality of the issuance of the search warrant. "[W]hen a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hyper-technical, rather than a commonsense, manner." United States v. Ventresca, supra.
I would affirm the decision of the trial court in all respects.