334 So.2d 577 (1976)
Gerald CROTEAU, Appellant,
v.
STATE of Florida, Appellee.
No. 46921.
Supreme Court of Florida.
June 16, 1976.
*578 Phillip A. Hubbart, Public Defender, and Elliot H. Scherker, Asst. Public Defender, for appellant.
Robert L. Shevin, Atty. Gen., and Wallace E. Allbritton, Asst. Atty. Gen., for appellee.
SUNDBERG, Justice.
This is an appeal from the Circuit Court of the Eleventh Judicial Circuit, in and for Dade County. Since that court construed Article I, Section 12, Florida Constitution and the Fourth Amendment to the United States Constitution, we have jurisdiction. Art. V, § 3(b)(1), Fla. Const.; Rule 2.1, Subd. a (5)(a), F.A.R.
Appellant, who had received three years' probation for a California drug offense but was at the time living in Florida, was visited at his place of residence at 8:00 A.M. on September 24, 1973, by three Florida probation officers, including his own.[1] Appellant's probation officer, a Mr. Suarez, asked whether he could "look around", and appellant agreed that he could. Appellant claims that he later told Suarez to discontinue his tour of appellant's living quarters and also asked whether the officer had a search warrant, which admittedly he did not have. Suarez claims that the appellant, Mr. Croteau, never expressed any objection to a search of his residence. In any event, Suarez found a bag of marijuana in the top drawer of a dresser located in appellant's bedroom.
On October 2, 1973, appellant was charged with unlawful possession of cannabis in violation of Section 893.13, Florida Statutes. He was arraigned and pleaded not guilty on November 7, 1973. The original information was dismissed and a new information filed on February 21, 1974. Four days later the defendant was arraigned and pleaded not guilty to the new information. On October 17, 1974, the defense filed a motion to suppress evidence obtained through an unreasonable search and seizure. A hearing was held on the motion to suppress evidence on October 21, 1974, and Messrs. Croteau and Suarez told their respective stories. At the termination of the hearing the judge said:
"... [I]f the defendant had not been a probationer, the opinion of the Court would be an illegal search and seizure, but in this instance, this Court has for a long time been of the opinion that when the Court places his people on probation, they are then in a little different category than the ordinary person and that person gives up at least some of his rights...."
Following that denial of the motion, the defendant withdrew his prior plea and entered a plea of nolo contendere, expressly *579 reserving the right to appeal the denial of the motion to suppress. The court found the defendant guilty and ordered a pre-sentence investigation. On November 21, 1974, adjudication was withheld and the defendant was placed on probation. An appeal was commenced to the District Court of Appeal, Third District, and was transferred to this Court because the trial court had construed controlling provisions of the state and federal constitutions. We reverse.
One does not absolutely forfeit the protection of the Fourth Amendment's prohibition of unreasonable searches and seizures merely by assuming the status of a probationer. Martin v. United States, 183 F.2d 436 (4th Cir.1950); Brown v. Kearney, 355 F.2d 199 (5th Cir.1966); State v. Gansz, 297 So.2d 614 (4th D.C.A.Fla. 1974). However, probationary status may be taken into account in determining whether a particular search was in fact reasonable. State v. Gansz, supra. The question presented on this appeal is whether the exclusionary rule applies to the evidence of Suarez' findings on the occasion of his early-morning visit to appellant's house. The procedural context in which this issue arises is that of a suppression hearing incident to a criminal charge, not a parole revocation hearing. The importance of this distinction will soon become apparent.
In State v. Gansz, supra, the court affirmed a trial judge's order suppressing evidence recovered by the State under circumstances similar to those at bar. There appellee's probation officer received an afternoon telephone call from an anonymous tipster, who suggested that the officer visit Gansz' house because he had been dealing in drugs since being placed on probation. At 10:00 P.M. on the same day the probation officer, accompanied by two colleagues as well as by local police officers, decided to visit the probationer's residence. Gansz was awakened, and, when told by his probation officer that the latter wanted to search the house, consented. The officers found marijuana in several different locations inside the dwelling. The district court held that Gansz was entitled to the protection of the Fourth Amendment, that the fact of his probationary status could be considered in determining the reasonableness of the search, that under this test the search was unreasonable because the officers did not obtain a search warrant, and that Gansz' consent to the search had not been given voluntarily. The trial court's order suppressing the subject evidence was affirmed.
Two cases from other jurisdictions persuade us to the view that, while evidence obtained in violation of the Fourth Amendment may be admissible against the probationer at a revocation hearing, such evidence cannot constitutionally be admitted at a criminal trial. In United States ex rel. Lombardino v. Heyd, 318 F. Supp. 648 (E.D.La. 1970), the relator, a probationer, was stopped and frisked without a warrant by a policeman who had been an arresting officer on the burglary charge giving rise to his probationary status. The officer had neither reasonable grounds for suspicion that Lombardino was armed nor probable cause for arrest, but the search uncovered a tin of marijuana. This evidence was ordered suppressed at a hearing in which the state court judge determined that the search had been illegal, and a charge of possession of marijuana was subsequently dropped by the State. At a later hearing, the same judge, after hearing the probation officer's testimony that Lombardino had been found in possession of marijuana, concluded that he had violated a condition of his probation and ordered the probation revoked. The relator, who had since been incarcerated, petitioned for habeas corpus relief in the United States District Court. The court dismissed the petition, approving both decisions made by the state trial judge as proper responses to the same evidence in the essentially different contexts of criminal suppression hearing and administrative revocation hearing. In 1971, the United States Court *580 of Appeals for the Fifth Circuit affirmed at 438 F.2d 1027. Under similar circumstances, an Illinois appellate court reached the same result in People v. Dowery, 20 Ill. App.3d 738, 312 N.E.2d 682 (1974), where tainted evidence was ruled admissible in a probation revocation hearing after it had been suppressed in a separate criminal proceeding.
We approve the position taken by the above-cited authorities. While the exclusionary rule does not apply to probation revocation hearings (see, e.g., United States v. Hill, 447 F.2d 817, 7th Cir.1971), which are administrative in nature, we think it constitutionally required that one facing trial for a new and discrete criminal offense, as Croteau was in the instant case, be given the full protection of the Fourth Amendment and the corollary means by which the search and seizure principle is vindicated. At the present time, chief among these means is the exclusionary rule,[2] and the trial court erred in refusing to invoke that sanction after making an express determination that evidence had been obtained illegally in the instant case. In short, we conclude that a probation officer has authority to enter upon the living quarters of his probationer to observe his life-style and any material evidence thereby discovered is admissible in proceedings for revocation of probation, but this does not validate an otherwise unreasonable search for contraband resulting in prosecution for a separate criminal offense.
Accordingly, the judgment is reversed and the case remanded to the circuit court for further proceedings not inconsistent herewith.
ROBERTS, ADKINS, BOYD and ENGLAND, JJ., concur.
HATCHETT, J., concurs with an opinion.
OVERTON, C.J., dissents with an opinion.
HATCHETT, Justice (concurring).
Today's decision demonstrates that it is within the province of the trial court to determine whether appeal of a noncapital felony conviction will lie to this Court, when a constitutional question is raised in the course of the prosecution. This does not represent a change in the general rule that noncapital felony convictions are appealed to the District Court of Appeal, even though the trial judge has explained his reasons for denying a suppression motion. I concur in the decision of the Court on jurisdiction and in the majority view that "while evidence obtained in violation of the Fourth Amendment[*] may be admissible *581 against the probationer at a revocation hearing, such evidence cannot constitutionally be admitted at a criminal trial." Ante, p. 579.
Ordinarily a trial court implicitly construes Art. I § 12 of the Florida Constitution and the Fourth Amendment to the United States Constitution in deciding a motion to suppress illegally seized evidence. That fact alone does not give this Court jurisdiction of the appeal. Rojas v. State, 288 So.2d 234 (Fla. 1973); Ogle v. Pepin, 273 So.2d 391 (Fla. 1973); Armstrong v. City of Tampa, 106 So.2d 407 (Fla. 1958). In Dykman v. State, 294 So.2d 633 (Fla. 1973) (reh. den. 1974) cert. den. 419 U.S. 1105, 95 S.Ct. 774, 42 L.Ed.2d 800 (1975) transferred 300 So.2d 695, the Court said:
Although our direct appeals jurisdiction includes cases in which the trial court inherently passes upon the constitutionality of a statute, we may not accept a direct appeal based upon an inherent construction of a constitutional provision;
* * * * * *
In ruling upon the motions to suppress, the trial court merely applied undisputed propositions of law to the facts it found to exist in the instant case, and in so doing found the motion not to be wellfounded. Even if the trial court ruling on the motion is erroneous, it would not support a direct appeal to this Court. At 634-636.
The trial judge here undertook "to explain, define or otherwise eliminate existing doubts arising from the language or terms of the constitutional provision." Armstrong v. City of Tampa, supra at 392. Not even that would suffice to confer jurisdiction on this Court, if the trial judge had not also specifically referred to "the Fourth Amendment." (R 48) No court can "construe a provision of our constitution without reference to it." Ogle v. Pepin, supra at 392. By expressly construing the Fourth Amendment in the present case, however, the trial judge rendered appellant's order of probation appealable here.
OVERTON, Chief Justice (dissenting).
I dissent. In my opinion it is reasonable and within the bounds of the Fourth Amendment for the supervising officer of a defendant on probation for a drug offense to search the quarters of the probationer and to use the evidence found in the search as a basis for liability for a separate criminal offense.
An individual who stands convicted of a criminal offense is granted a privilege by being allowed to be free on probation. That privilege is conditioned upon his supervision by an assigned probation officer. A supervised probationer is in an entirely different status than an ordinary citizen.
The majority holds the search by a supervising probation officer is unreasonable to the extent it is used to charge a new criminal offense but reasonable when used to revoke probation. The purpose of the exclusionary rule is to prevent illegal conduct by law enforcement officers. I fail to see the logic in the view expressed by the majority. What is legal and proper to revoke probation should also be legal to charge a new criminal offense. The trial court's denial of the motion to suppress was correct, and its decision should be affirmed.
NOTES
[1] Appellant's California probation form, which is part of the record in this case, contained some twenty conditions with a small box adjacent to each. Five of these boxes were marked with an "X." Among those conditions not so checked was that appellant "[s]ubmit his person and property to search or seizure at any time of the day or night by any law enforcement officer with or without a warrant." The State's position that an unmarked condition on a standard probation form was, explicitly or implicitly, part of the agreement between the parties is simply untenable.
[2] The exclusionary rule in this context has become the object of much judicial dissatisfaction, and its future appears uncertain. See, e.g., Chief Justice Burger's dissenting opinion in Bivens v. Six Unknown Named Agents, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971):

"Some clear demonstration of the benefits and effectiveness of the Exclusionary Rule is required to justify it in view of the high price it extracts from society  the release of countless guilty criminals .. . But there is no empirical evidence to support the claim that the rule actually deters illegal conduct of law enforcement officials... ."
Id. at 416, 91 S.Ct. at 2014, 29 L.Ed.2d at 638.
[*] In addition, I believe that Florida law requires the same result, independently of the Fourth and Fourteenth Amendments. The warrantless search and seizure of appellant's dwelling is in violation of Fla. Const. art. I, § 12 (1975). See Fla. Stat. § 933.18 (1975); Cooper v. State, 106 Fla. 254, 143 So. 217 (1932); Pesce v. State, 288 So.2d 264 (Fla.App. 4th Dist. 1974); Gelis v. State, 249 So.2d 509 (Fla.App. 2d Dist. 1971); Panzavecchia v. State, 201 So.2d 762 (Fla.App. 3d Dist. 1967). In Florida, the exclusionary rule is not merely a judicial construct but is written into the Constitution itself. "Articles or information" obtained unreasonably, within the meaning of Art. I § 12, "shall not be admissible in evidence." Fla. Const. art. I, § 12 (1975). Unquestionably this provision applies to trials. The present case does not require decision whether evidence seized in violation of Art. I § 12 must also be excluded from probation hearings. Cf. Bernhardt v. State, 288 So.2d 490, 500 (Fla. 1974); Brill v. State, 159 Fla. 682, 32 So. 607 (1947).