396 So.2d 1205 (1981)
The STATE of Florida, Appellant,
v.
James Leo DODD, Appellee.
James Leo DODD, Appellant,
v.
The STATE of Florida, Appellee.
Nos. 80-322, 80-499.
District Court of Appeal of Florida, Third District.
April 21, 1981.
Bennett H. Brummer, Public Defender and Bruce A. Rosenthal, Asst. Public Defender, for James Leo Dodd.
Jim Smith, Atty. Gen. and Anthony C. Musto, Asst. Atty. Gen., for the State.
Before BARKDULL, SCHWARTZ and NESBITT, JJ.
SCHWARTZ, Judge.
Dodd was on probation on four separate third-degree felonies when he was charged with the second degree murder of Arthur Griffin. After a combined hearing on the merits of both the alleged probation violation and a defense motion to suppress in the substantive murder case, the trial judge *1206 ruled that Dodd's confession, which was the only evidence against him, had been secured as a result of a fourth amendment violation like the one involved in Dunaway v. New York, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979);[1] the confession was therefore suppressed as to the murder trial. The court also ruled, however, that the exclusionary rule does not apply in probation revocation proceedings; accordingly, the defendant's probationary terms were revoked and he was given four consecutive five-year sentences on the original charges. The state appeals from the order of suppression in the murder case and the defendant has filed a subsequently-consolidated cross-appeal from his convictions on the probation violations. We reverse on both the appeal and cross-appeal and remand for further proceedings as to all the pending cases.

Confession Erroneously Suppressed
As the trial judge noted, the facts of this case bear a strong superficial resemblance to those in Dunaway. As there, the defendant confessed shortly after he was brought to the police station for questioning about the murder by officers who went to his home to get him and who admittedly had no probable cause to believe him guilty of the crime. But the basis of the result in Dunaway, as well as in the similar case of Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975), was the existence of an unbroken causal chain between the confession and an involuntary, constitutionally-unjustified "seizure" of the defendant. Decisively unlike Dunaway, the present record does not contain any evidence to establish the fundamental determination that such a seizure  as opposed to voluntary acquiescence by the defendant  had in fact taken place. In Dunaway, this indispensable element was established by the facts, among others, that the lead detective had ordered Dunaway to be "picked up" and "brought in" and that he "would have been physically restrained if he had attempted to leave." 442 U.S. at 203, 99 S.Ct. at 2251, 60 L.Ed.2d at 830. The Supreme Court flatly stated at 442 U.S. 207, 99 S.Ct. 2250, 60 L.Ed.2d 832, that Dunaway had been "taken involuntarily to the police station."
The showing made below is entirely different as to this key point. None of the three officers sent to retrieve Dodd, nor Dodd himself, testified at the hearing. On the seizure issue, the only one who did was the lead detective, Tommy Gergen, who dispatched the officers to Dodd's home and interrogated him after he arrived but was not present when the actual encounter with the policemen took place. Gergen stated that he had sent the officers to "ask" if Dodd would "come along" or "accompany" them to the station. If Dodd had refused to go, Gergen said that, since there was no warrant for his arrest, "I certainly couldn't have dragged him out of there. He would have been left there." Furthermore, even after Dodd got to the station, he was free to leave at any time until he confessed to the murder and was therefore placed under arrest. The defendant's statement itself substantiates this version of the actual events:
Q. When the police arrived at the house, did you voluntarily go with them?
A. Yeah, I volunteered to go with them. Only at the time, I didn't know what was going on, really until I got down to the station.
Q. You agreed to go with them at the time?
A. I agreed to go with them, yeah.[2]
*1207 Thus, the only evidence in this record shows not that a seizure had taken place so as to invoke Dunaway, but rather that Dodd had willingly, upon request, and without coercion gone to the police station in the company of the officers.[3] Such a voluntary act does not constitute a fourth amendment seizure so as to taint any properly-secured confession which is given thereafter. Oregon v. Mathiason, 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977); Dunaway v. New York, supra (Rehnquist, J., dissenting); United States v. Chaffen, 587 F.2d 920 (8th Cir.1978); United States v. Brunson, 549 F.2d 348 (5th Cir.1977), cert. denied, 434 U.S. 842, 98 S.Ct. 140, 54 L.Ed.2d 107 (1977); United States v. Bailey, 447 F.2d 735 (5th Cir.1971); Doran v. United States, 421 F.2d 865 (9th Cir.1970); Hicks v. United States, 382 F.2d 158 (D.C. Cir.1967); Bridges v. United States, 392 A.2d 1053 (D.C. 1978), cert. denied, 440 U.S. 938, 99 S.Ct. 1286, 59 L.Ed.2d 498 (1979); State v. Morgan, 299 N.C. 151, 261 S.E.2d 827 (1980), cert. denied, 446 U.S. 986, 100 S.Ct. 2971, 64 L.Ed.2d 844, (1980); see United States v. Mendenhall, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980); Login v. State, 394 So.2d 183 (Fla.3d DCA 1981), and cases cited.
Dodd contends that it was the state's burden to show that Dodd had voluntarily gone to the station and that, by failing to call the officers who actually picked him up[4] or to present any other direct evidence as to the manner in which that occurred, it has necessarily failed in that burden. We reject this analysis of the legal situation. The defendant's entire position is based on the claim that the confession was the product of a fourth amendment seizure of his person. On such threshold questions as the very existence of a search or seizure, the defendant, and not the state, bears the initial burden of proof under both Fla.R.Crim.P. 3.190(h) and 3.190(i), which deals specifically with confessions. See State v. Lyons, 293 So.2d 391 (Fla. 2d DCA 1974). It is true that a showing that such a seizure, once established, was effected without a warrant raises a presumption of illegality which then shifts the burden to the prosecution to show otherwise,[5]State v. Hinton, 305 So.2d 804 (Fla. 4th DCA 1975). The proof adduced below, however, never got nearly to that stage. The defendant retained the burden on his motion to suppress and did not carry it.
In view, therefore, of the defendant's failure to establish a "seizure," (and *1208 the affirmative showing to the contrary), the order of suppression cannot be upheld. We do not, however, direct that, after remand, the motion simply be denied. This is because, after the conclusion of the hearing, the public defender sought leave to reopen Dodd's case to present additional testimony "relevant [to Dodd's] being taken into custody." This was not done only because the trial judge broadly hinted that it was unnecessary in the light of the ruling in the defendant's favor which he was about to make and which he in fact announced immediately thereafter. Now that we have found error in that ruling, it is obvious that the defendant must be given the opportunity to present the proposed testimony; the state may also present additional evidence to rebut it.[6] Accordingly, the case shall be remanded for a new hearing to be conducted and determined in the light of the views expressed in this opinion.

Error to Hold Exclusionary Rule Inapplicable to Probation Revocation

The proceedings on remand which have already been ordered may result in a finding that Dodd's confession was not unconstitutionally secured. It may therefore be premature to rule at this time on the issue raised on cross-appeal challenging the lower court's ruling that the exclusionary rule is inapplicable to probation proceedings. Nevertheless, because, if we agreed with that determination, we would be compelled now to affirm the revocations, and in the interests of a full adjudication of the case, we proceed to a resolution of that issue. In our view, the recent supreme court decision in Grubbs v. State, 373 So.2d 905 (Fla. 1979) compels the conclusion that the exclusionary rule does apply in Florida revocation proceedings; we therefore disapprove the contrary conclusion below. The reasons for this interpretation of the Grubbs decision in the light of the prior Florida law on the subject were ably and exhaustively explored in both the majority and specially concurring opinions in Ray v. State, 387 So.2d 995 (Fla. 4th DCA 1980), with both of which we agree and to which we could add very little. The state contends that the explicit language in Grubbs, upon which we and the Ray court have relied, is merely dictum, since the only actual issue in Grubbs was the propriety of a condition of probation requiring submission to improper searches. This argument proves too much. The court's holding that it is constitutionally impermissible even to pre-condition an act of judicial grace like probation upon a waiver of one's fourth amendment rights applies a fortiori to a situation in which those rights are violated and no such condition has been previously imposed.
We acknowledge that, if it were not for Grubbs, and on the basis of Croteau v. State, 334 So.2d 577 (Fla. 1976) and the federal cases and authorities cited both in Croteau and Grubbs itself, we would hold the exclusionary rule inapplicable to probation cases. See also, e.g., State v. Alfaro, 623 P.2d 8 (Ariz. 1980). Moreover, while we feel ourselves required to follow that decision, Grubbs and therefore this opinion as well appear to be contrary to Croteau, which Grubbs cites but does not overrule, and to the appellate decisions which followed Croteau prior to Grubbs. Shipp v. State, 349 So.2d 690 (Fla. 4th DCA 1977) and Latham v. State, 360 So.2d 127 (Fla. 1st DCA 1978). Therefore, to permit employment of the supreme court's discretionary jurisdiction under Fla.R.App.P. 9.030(a)(2)(A)(iv), we "expressly" state that this opinion, while in accord with Grubbs, directly conflicts with the Croteau decision on the same point of law. Furthermore, pursuant to Fla.R. App.P. 9.030(a)(2)(A)(vi), we certify[7] that this decision is also in direct conflict with Shipp v. State, 349 So.2d 690 (Fla. 4th DCA 1977) and Latham v. State, 360 So.2d 127 (Fla. 1st DCA 1978).

*1209 Conclusion

The order of suppression and the judgments of conviction upon the revocations of probation are reversed, and the causes remanded for further proceedings consistent herewith.
Reversed and remanded.
NOTES
[1] The lower court rejected the defendant's additional claim that he did not understandingly waive his fifth amendment rights after he had been given Miranda warnings. Dodd makes no appellate challenge to that ruling.
[2] The defendant claims that the contents of a challenged confession may not be employed to establish the circumstances under which that statement came to be made. Particularly since there is no present contention that the statement was coerced or otherwise subject to a likelihood of objective unreliability, we do not agree with this contention. See, Lane v. State, 353 So.2d 194 (Fla. 3d DCA 1977). Even if we did, however, the ultimate result would not be different since there would still remain no evidence of the "seizure" which is required to support the determination below and which, as we hold, infra, it was the burden of the defendant to provide.
[3] The defendant points to the unlikelihood of a purely voluntary submission to a "request" by three officers to "accompany" them to the station. While there is force to this argument, see United States v. Tucker, 610 F.2d 1007 (2d Cir.1979); People v. Dowdell, 81 Ill. App.3d 266, 36 Ill.Dec. 614, 401 N.E.2d 295 (1980), this set of circumstances, standing alone, is insufficient to justify a finding that a "seizure" has occurred. Bridges v. United States, 392 A.2d 1053 (D.C. 1978), cert. denied, 440 U.S. 938, 99 S.Ct. 1286, 59 L.Ed.2d 498 (1979); State v. Morgan, 299 N.C. 151, 261 S.E.2d 827 (1980), cert. denied, 446 U.S. 986, 100 S.Ct. 2971, 64 L.Ed.2d 844 (1980); see Login v. State, 394 So.2d 183 (Fla. 3d DCA 1981).
[4] The state claims that this occurred because it was somehow misled below into the belief that the defendant was raising no Dunaway-like issue, and therefore had no way of knowing the officers' testimony was necessary. In fact, however, the record shows that defense counsel clearly articulated this contention early on in the hearing and that the prosecution nevertheless made no attempt to secure the officers, or continue or reopen his case in order to do so, even after the court had announced its ruling on the explicit ground that Dunaway controlled. While the state will get another bite at this apple on remand because of our determinations concerning the contents of the record and the applicable burden of proof, the state is, in a sense, fortunate that this has occurred. If we had ruled otherwise on these points, we would not have reversed simply in order to give the state another chance to do what it should have done the first time.
[5] It is undisputed that there was no probable cause (or even founded suspicion) to support a seizure of Dodd's person. In this connection, there is no indication that the fact that Dodd was on probation was even considered by the officers or is otherwise pertinent in determining whether any seizure of Dodd was a "reasonable" one. See State v. Grubbs, infra; Ray v. State, infra. The sole issue, therefore, involves the resolution of the "seizure v. voluntary action" question.
[6] See note 4, supra.
[7] Article V, § 3(b)(3) Fla. Const. (1981) provides for a certificate of direct conflict only with decisions of other district courts of appeal, and not with those of the supreme court.