AMERICAN SAMOA GOVERNMENT, Plaintiff

v.

PENI SAMANA, Defendant

High Court of American Samoa
Trial Division

CR No. 36-88
CR No. 54-86

July 6, 1988

Before KRUSE, Associate Justice and TAUANU'U, Chief Associate Judge.

Counsel: For Plaintiff, James Doherty, Assistant Attorney General
For Defendant, Herbert Evans, Assistant Public Defender

On Motion to Suppress Evidence:

In case docketed CR No. 54-86 the defendant, Peni Samana, was convicted of possession of a controlled substance in violation of A.S.C.A. § 13.1022, a class D felony. He was sentenced thereunder to five years imprisonment execution of which was suspended and defendant was placed on probation for a period of five years subject to a number of conditions. One of those conditions was that defendant "not violate any law of the Territory."

Recently, and within the period of probation, defendant is charged in case docketed CR No. 36-88 with the unlawful production/cultivation of a controlled substance --- marijuana --- in violation of A.S.C.A. § 13.1020, an unclassified felony. As a result plaintiff American Samoa Government has moved to revoke defendant's probationary status in CR No. 54-86.

The defense has moved to suppress evidence collected pursuant to a search warrant issued by the District Court. Defense counsel contends that the warrant was not based upon a legitimate finding of probable cause, because the affidavit submitted in support of the warrant contained information provided to the police by a confidential informant about whom no information is provided.

The government "concedes" that the evidence would not be admissible in an independent criminal prosecution. It contends, however, that the exclusionary rule does not operate to exclude illegally discovered evidence from proceedings to revoke probation. The government directs us to a number of state and federal court decisions to that effect, but in our examination of those decisions we do not find them to be of persuasive value to this jurisdiction. For example, the government cites State v. Foisy, 384 A.2d 42 (Me. 1978), as

2

possible authority that a similar constitutional provision has been treated as coextensive with the federal fourth amendment. As it turns out, however, Maine does not seem to have an exclusionary rule as part of its constitution; to the contrary, until it was obliged by Mapp v. Ohio, 367 U.S. 643 (1961) and Ker v. California, 374 U.S. 23 (1963) to apply the exclusionary rule as a requirement of the federal fourth amendment, Maine did not enforce an exclusionary rule at all. State v. Stone, 294 A.2d 683, 693 n. 15 (Me. 1972).

The Revised Constitution of American Samoa, Article 1 section 5, prohibiting unreasonable searches and seizures, tracks the language of the fourth amendment to the United States Constitution but then includes the following:

> Evidence obtained in violation of this section shall not be admitted in any court.

This last sentence explicitly entrenches the exclusionary rule in the American Samoa Constitution whereas its federal (and Maine) counterpart exists only by case development and judicial policy. This provision is more narrowly defined than the fourth amendment and therefore it follows that, whatever the policy reasons for viewing the fourth amendment's exclusionary requirements as applicable only to initial criminal proceedings but not to probation revocation proceedings, those policy reasons have been rendered irrelevant by the framers of the territorial constitution. The language is clear and the purport of the provision comprehensive and therefore lacking the flexibility accorded the fourth amendment. In American Samoa, therefore, evidence which is obtained from an illegal search and seizure is inadmissible not only in an initial criminal proceeding but also in a probation revocation proceeding.[1]

---

[1] The state of Florida's experience is persuasive. Similar to Article 1 section 5 of the Revised Constitution of American Samoa, the Florida Constitution contains an explicit constitutional exclusionary rule. Article 1, section 12 thereof provides for the right against unreasonable searches and seizures and further contains the following language:

3

"Articles or information obtained in violation of this right shall not be admissible in evidence".

Notwithstanding, the state's courts had, without reference to this provision, purported to apply the federal fourth amendment and thus judicial policy thereunder developed to differentiate between criminal proceedings and probation revocation proceedings for purposes of an exclusionary rule. This development was widely accepted with the Florida Supreme Court's ruling in Croteau v. State, 334 So. 2d 577 (Fla. 1976.).

Three years later the Court retracted from this position and held that the exclusionary rule in Florida was applicable to probation revocation proceedings. Grubbs v. State, 373 So. 2d 905 (Fla 1979). Subsequent lower courts while applying Grubbs appeared do so with some reluctance, expressly noting the uncertainty with the apparent conflict in the two decisions of the state Supreme Court. E.g., Huppertz v. State, 399 So. 2d 992 (Fla. App. 1981); Ray v. State 387 So. 2d 995 (Fla. App. 1980).

Any doubts were put to rest by the Florida Supreme Court in State v. Dodd, 419 So. 2d 333 (Fla. 1982), with its holding that the exclusionary rule embodied in the state constitution applied equally to probation revocation proceedings. In a footnote to the opinion, the court distinguished its earlier ruling in Croteau as containing an unnecessary reference to the exclusionary rule being inapplicable to revocation proceedings. This reference was treated as dicta since Croteau was dealing with a criminal prosecution and not probationary matters. Moreover, there was no reference in the decision distinguished to Article I, section 12 of the Florida Constitution. Id at 335 n.2.

A further development with the Florida exclusionary rule is pertinent to our conclusions. In 1983, Article I, section 12 of the constitution was amended essentially to require construction of that provision "in conformity with the 4th Amendment to the United States Constitution, as interpreted by the United States Supreme Court." This

4

If it thus turns out that the evidence here seized was in violation of Article I section 5, then it is also inadmissible even in the probation hearing.

The question now arises whether the warrant was clearly defective as the government concedes. Article I section 5 provides in part:

> no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and . . . things to be seized.

The police officer's affidavit supporting the warrant contains the following: (a) that in Sogi District of Leone, on the land of Peni Samana, between the one house and sami, there are marijuana plants being cultivated in the midst of other dense vegetation. The plants are located approximately thirty yards from the house; some of the plants are growing directly in the soil and some of the plants are in pots on top of the ground. The plants range in height from three to five feet tall; (b) I have received this information about these plants from a confidential informant who lives in Leone. This informant reported to me on March 30, that Peni

---

amendment has prompted the state appellate courts in a number of cases to certify the question whether the 1983 constitutional amendment had affected Dodd. See, e.g., Tamer v. State, 463 So. 2d 1236 (Fla. App. 1985); Pina v. State, 473 So. 2d 736 (Fla. App. 1985). At this time we have not been able to ascertain whether the Florida Supreme Court has answered the question certified.

The observation however to be made with the above is that while the judicially developed rule is readily subject to refinement by the courts, a constitutional rule change is better left to the appropriate policy makers for constitutional amendments.

Samana was also searching the neighborhood trying to find out who had stolen some of his marijuana plants; and (c) I have reviewed the criminal records and found that Peni Samana pled guilty in 1986 to a charge of cultivating marijuana. On November 26, 1986 he was placed on five years probation for that offense by Judge Thomas Murphy.

Since _Illinois v. Gates_, 462 U.S 213 (1983), (shortly followed by _Massachusetts v. Upton_, 466 U.S 727 (1984)) the technical and formulaic analysis of probable cause created in _Aguilar v. Texas_, 378 U.S 108 (1964), and _Spinelli v. United States_, 393 U.S 410 (1969), in connection with information gained from an undisclosed informant, has been displaced in favor of a "totality of the circumstances" test. The formerly rigid "two prong test" required the affiant to reveal (a) some underlying circumstances from which the informant concluded that contraband is where he claims it is (the "basis of knowledge prong"); and (b) some underlying circumstances from which the affiant concludes that the informant is credible or his information reliable (the "veracity" prong). _Aguilar_, _supra_, at 114. If the informant's tip is found inadequate under this two pronged test, then other allegations in the affidavit corroborating the information could sustain probable cause. _Spinelli_, _supra_, at 415.

In _Gates_, the Court while acknowledging the continuing importance and relevancy of "veracity" and "basis of knowledge," dismissed the prior understanding that these elements were entirely separate and independent requirements to be rigidly exacted in every case. Rather, they were to be understood simply as closely intertwined issues that may usefully illuminate common sense, practical question as to whether under the totality of the circumstances there is "probable cause" to believe that contraband is located at a particular place.

Thus under the totality of the circumstances analysis, "a deficiency in one [element] may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." _Gates_, _supra_, at 233. The examples given by the Court of attendant indicia essentially illustrate that a warrant based on a tip which might not be sufficient by itself can nonetheless survive if the

6

information provided by the tip is combined with other _corroborative_ information that in sum would justify a finding of probable cause.

As viewed by _Gates_, the magistrate's exercise is a factual one dealing in probabilities and appealing to practical considerations of every day life on which reasonable and prudent men act rather than to the technical world of legal technicians. On the other hand a reviewing court is subject to a deferential standard; that is, it may only address whether the evidence viewed as a whole provided a "substantial basis" for the magistrate's finding of probable cause as opposed to an after the fact de novo assessment of probable cause. _Upton_, _supra_, at 733.

We turn now to review the affidavit in question. The "basis of [the informant's] knowledge" that marijuana was being grown on defendant's property is far from clear on the affidavit. There is no direct information about how the informant obtained his knowledge--- whether it was from personal observation, or from a further undisclosed informant, or from inference drawn by the informant himself on the basis of information known only to him, or even perhaps through hunch or speculation.

Similarly in terms of "veracity" the affidavit is not clear. The usual recitals pointing to creditability or reliability of an undisclosed informant are not present here[2] --- that the informant has previously proved to be reliable as shown by information he has supplied in the past to be accurate, that the informant is known to affiant as a reliable person and has provided himinformation in the past, that the informant is an honest citizen stepping forward to report criminal activity. The affidavit contains no specific statement assuring the reliability of the source.

_____

[2] Compare the affidavit given as the basis for the warrant issued in the earlier case CR No. 54-86. There the district court judge was provided a litany of reasons concerning the reliability of the undisclosed informant.

7

On the other hand we would be remiss with regard to _Gates_' teachings if our analysis ended here as neither of the foregoing elements are independently indispensable. The "basis of knowledge"/"veracity" of the informant are merely two important factors to be assessed against all the circumstances set forth in the affidavit. With this in mind we look for other "corroborative" factors and other "indicia of reliability."

Arguably the informant's statement, that the defendant was searching the neighborhood trying to find out who had stolen his plants, could be a basis for crediting the informant with knowledge of growing plants (and therefore veracity) when coupled with the detail given regarding where the plants were said to be growing on defendant's property. This could be a plausible factor but in the circumstances the resulting inference is tenuous. The basis of the inference suffers from the same general deficiency noted above and that is the "basis of the informant's knowledge" that the defendant was searching the neighborhood. Was this information gathered on first hand observation, or third party reports, or plain old village rumour. Again the affidavit is unclear. Additionally there is no hint on how fresh the data was, at least with regard to when the marijuana was observed on defendant's property. The data given relates in time to when the defendant was looking for his stolen contraband.

Independent corroborative efforts were apparently nil. The value of corroborating details of an informant's tip by independent police work was clearly highlighted in such cases as _Draper v. United States_, 358 U.S. 307 (1959), and _Jones v. United States_, 362 U.S. 257 (1960). We also note on this affidavit the complete absence of reference to any independent corroboration attempts to check out the tip itself. In these circumstances the only assumption that can be reasonably drawn is that the police were content to rely on the informant's veracity.

One other matter set out in the affidavit was the affiant's awareness of the prior conviction of the defendant for the same offense charged hereunder as well as of the defendant's current probationary status. Does this information shed a different light on the other paragraphs asserting

8

knowledge of growing plants and a search for stolen plants undertaken by the defendant?

We cannot so conclude even cautious of our limitation on review to give "great deference" to the magistrate and mindful of the requirement that we should guard against "[a] grudging or negative attitude . . . toward warrants." United States v. Ventresca, 380 U.S. 102, 108 (1965). The informant's tip standing alone is intrinsically inadequate and uncorroborative. The separately independent information of the officer regarding the defendant's prior record really provides no nexus for probability. From a common sense view point the best that the officer's statement may add in the circumstances is nothing more than "suspicion" and that suspicion in turn lacks both corroboration and other indicia of reliability.[3]

As stated above the information given the district court judge must provide a substantial basis for determining the existence of probable cause. A district court judge must himself make a detached judgment as to the reliability of the sources of the affiant's information. E.g., United States v. McCoy, 478 F.2d 176 (10th Cir.), cert. denied 414 U.S 828 (1973). This possibility was not provided by the affidavit which we viewed above as permitting no more a conclusion than that the affiant himself was relying on the informant's reliability. The principal statement concerning criminal activity in the affidavit is left standing on its own unsupported by the remainder of the affidavit in terms of corroboration and other indicia of reliability. As such, the affidavit before the district court judge was in essence conclusionary and accordingly without any basis at

_____

[3] Indeed the officer's statement of prior conviction could have been the subject of a timely motion to strike under Franks v. Delaware, 438 U.S. 154 (1978), as having been made with reckless disregard for factual accuracy. The officer deposed to a prior conviction of cultivation/production of a controlled substance in CR No. 54-86 whereas the Court's written judgment and sentence thereunder pertains to a violation of the lesser offense of "possession" of a controlled substance.

all to sustain a judgment of probable cause. Nathanson v. United States, 290 U.S. 41 (1933).

On the foregoing we conclude, in agreement with the government, that the warrant issued was in violation of Article 1, section 5 of the Revised Constitution of American Samoa and therefore any evidence thereby obtained is inadmissible in any court.

The motion to suppress is granted and it is so ORDERED.